IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 21-407 |
| CONRAD BENEDETTO | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Conrad Benedetto is a personal injury attorney who committed multiple tax crimes. Benedetto failed to file personal returns within the date required by law for tax years 2016 to 2018. For the last three quarters of 2017, Benedetto failed to file Forms 941 to truthfully account for federal income and FICA taxes withheld from the wages of his law firm's employees, failed to pay those withheld taxes over to the IRS, and failed to remit the firm's matching share of FICA taxes. The defendant committed these tax crimes after filing false personal returns understating his practice's gross receipts (and for one year, overstating its expenses) on the attached Schedules C years for tax years 2013 to 2015. His conduct resulted in a criminal tax loss of $715,746 and restitution of $425,463.

In light of all of this conduct, the Government respectfully submits that the defendant deserves a sentence of incarceration at the high end of the guidelines range.

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted).

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a sentence at the high end of the final advisory range.

I. **BACKGROUND**

    A. **Procedural History**

On October 12, 2021, the grand jury returned a nine count Indictment, charging defendant Benedetto with three counts of willfully filing false tax returns in violation of 26 U.S.C. § 7206(1) (tax years 2013-2015); willful failure to file tax returns in violation of 26

U.S.C. § 7203 (tax years 2017-2019); and three counts of failure to collect or pay employment tax, in violation of 26 U.S.C. § 7202 (three quarters in 2017).

On November 28, 2022, defendant Benedetto pled to Counts Four through Six of the Indictment, charging him with failure to file a tax return, in violation of 26 U.S.C. § 7203, and Count Seven of the Indictment, charging him with failure to collect or pay employment tax, in violation of 26 U.S.C. § 7202, pursuant to a plea agreement.[1] All of Benedetto's tax crimes arose during the defendant's ownership and operation of his personal injury law practice.

B. **Factual Summary**

At his change of plea hearing, the defendant agreed to the following factual summary:

During the relevant tax years, defendant Conrad Benedetto was an attorney who resided in Philadelphia and was licensed to practice in the Commonwealth of Pennsylvania and the State of New Jersey. Benedetto owned and operated his law practice in Philadelphia, Pennsylvania. He was the only signatory on the law firm bank accounts and was the only person who could authorize the payment of the employment taxes. The relevant bank accounts include Benedetto's Pennsylvania attorney escrow account (PNC account ending in 9471) and Benedetto's operating account (PNC account ending in 9498). While Benedetto retained an accountant to reconcile the x9498 operating account, Benedetto maintained sole responsibility to account for the x9471 escrow account. *See* PSR ¶ 12.

As the sole owner and operator of his law practice, defendant Benedetto had a duty to timely and accurately file and report all gross receipts earned and expenses incurred by the law

---

[1] Pursuant to the plea agreement, at the time of sentencing, the government will move to dismiss Counts One through Three, Eight and Nine of the indictment as to this defendant.

practice on Schedule C of his personal tax returns (IRS Form 1040). Defendant Benedetto failed to truthfully report the law practice's gross receipts on IRS Form 1040 for tax year 2013, by underreporting gross receipts in the approximate amount of $225,800.40. Defendant Benedetto failed to truthfully report the law practice's gross receipts on IRS Form 1040 for year tax 2014, by underreporting gross receipts in the approximate amount of $51,881.95 and overstating expenses in the approximate amount of $172,382.51. Defendant Benedetto failed to truthfully report the law practice's gross receipts on IRS Form 1040 for tax year 2015, by underreporting gross receipts in the approximate amount of $742,671.80 and understating expenses in the approximate amount of $278,048.35. The underreporting was caused by defendant Benedetto's failure to provide his accountant with a truthful and accurate accounting of Benedetto's Pennsylvania attorney escrow bank account (PNC account ending in 9471). In total, defendant Benedetto's underreporting of gross receipts on IRS Form 1040 for each of the calendar years from 2013 through 2015, and overstating expenses in year 2014, resulted in a tax loss of approximately $403,923. *See* PSR ¶ 13.

For each of tax years 2016, 2017 and 2018, defendant Benedetto earned legal fees of more than $1,000,000. Between 2016 and 2018, inclusive, defendant Benedetto had over $8,000,000 in gross receipts. However, for each of the tax years 2016, 2017 and 2018, defendant willfully failed to file an income tax return by the due date listed below:

| COUNT | YEAR | FILING DUE DATE |
|-------|------|-----------------|
| 4 | 2016 | April 18, 2017 |
| 5 | 2017 | April 17, 2018 |
| 6 | 2018 | April 15, 2019 |

In total, defendant Benedetto's failure to file IRS Form 1040 for each of the calendar years from 2016 through 2018 resulted in a tax loss of at least $229,266. PSR ¶ ¶ 14-15.

During the relevant tax years, defendant Conrad Benedetto withheld taxes from his employees' paychecks, including federal income taxes, Medicare and social security taxes (often referred to as Federal Insurance Contribution Act or "FICA" taxes or as "payroll taxes"). Employers were required to make deposits of the payroll taxes to the IRS on a periodic basis, in this case, semi-weekly. Employers were required to file, following the end of each calendar quarter, an Employer's Quarterly Federal Income Tax Return (Form 941), setting forth the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of social security and Medicare taxes due to the IRS. PSR ¶ 16.

Throughout the calendar year 2017, defendant Benedetto withheld tax payments from his employees' paychecks. However, beginning in approximately April, 2017, defendant Benedetto made no payments to the Internal Revenue Service. On or about July 31, 2017, for the second quarter of 2017, defendant Benedetto failed to file Form 941 with the IRS, and to pay over the taxes to the IRS (Count Seven). For the third and fourth quarters of 2017, defendant Benedetto failed to file the Forms 941 with the IRS, and to pay over the taxes to the IRS. PSR ¶ 17.

For each of the second, third and fourth quarters of 2017, defendant Benedetto failed to pay over to the IRS approximately $18,986 in payroll taxes. Thus, defendant Benedetto failed to timely report and pay over to the IRS a combined total of approximately $56,904. PSR ¶ 18.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence.

The statutory maximum sentencing for each of Counts Four through Six, willful failure to file a tax return, is one year imprisonment, a one year period of supervised release, a $100,000 fine, and a $25 special assessment. The statutory maximum for Count Seven, willful failure to collect or pay over employment tax, is five years' imprisonment, a three year period of supervised release, a $250,000 fine, and a $100 special assessment.

The total statutory maximum is eight years' imprisonment, a three year period of supervised release, $550,000 fine, and a $175 special assessment. Full restitution of as much as $425,463.00 also shall be ordered.

### B. Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range, concluding that Benedetto had an offense level 17 and a criminal history category I, resulting in a guideline range of 24 to 30 months. PSR ¶ 77. Because the stipulated criminal tax loss of $715,746.00, the defendant's base offense level is 20, pursuant to USSG § § 2T1.1 and 2T4.1.. PSR ¶ 26. After a three point adjustment for acceptance of responsibility, the offense level is 17. PSR ¶ 35.

## III. ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one at the high end of the advisory guideline

range.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). The advisory guideline range and the Section 3553(a) factors support a sentence of imprisonment at the high end of the final advisory range.

A.  **Nature and Circumstances of the Offense & the History and Characteristics of the Defendant**

From 2013 to 2018, defendant Benedetto willfully chose to defraud the IRS year after year, in a variety of ways. For tax years 2013 to 2015, he filed false personal returns understating his practice's gross receipts (and for one year, overstating its expenses) on the attached Schedules C. Then, for tax years 2016-2018, he stopped filing personal returns altogether. Finally, for the last three quarters of 2017, Benedetto deducted from his employees' wages the employment taxes he was requited for withhold. Every pay period, his employees' salaries were reduced by the amount of taxes he withheld. However, instead of paying those funds to the IRS, as he had been entrusted to do by the government and his employees, he pocketed the money and spent it on personal expenses that benefitted him and his family.

In the PSR interview, Benedetto minimizes this conduct by stating he "wasn't paying attention." PSR ¶ 22. He told probation that because he was "paid in contingencies" he is "always late filing returns and paying taxes." This is absurd. A mistake or lapse of judgement happens once. Benedetto deliberately and willfully ignored his responsibilities as an employer and a taxpayer for years. Benedetto repeatedly disregarded his obligations by prioritizing other payments, including personal expenditures.

Benedetto's history and characteristics do not mitigate the crimes. He is a sophisticated and intelligent individual. He is an attorney with the understanding of finances required to operate a practice that had over $8 million of gross receipts between 2016 and 2018—the years for which he failed to file and report those gross receipts. Benedetto was also the designated tax matters partner for Monterey Avenue Associates LP., his Jersey Shore real estate venture. Moreover, Benedetto comes from a stable family environment that provided the support to obtain

8

higher education and become successful. As Judge Posner stated in *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999),

> Business criminals are not to be treated more leniently than members of the "criminal class" just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity …Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime.

Benedetto could have enjoyed a comfortable lifestyle while attending to his tax obligations. Notably, the current case arose out of a referral from a civil examination, and the PSR reports a liability for back taxes owing the City of Philadelphia. Benedetto's longstanding disregard for his tax responsibilities across all tax types supports a period of incarceration at the high end of the guidelines.

  B. **<u>Need for Sentence to Reflect Seriousness of the Offenses, Promote Respect for the Law, and Provide Just Punishment for the Offenses</u>**

Section 3553(a)(2)(A) provides that the sentence imposed should "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense." Benedetto's actions over a six year period demonstrate a law of respect for the nation's tax laws. The federal tax system relies on the honesty and cooperation of all its citizens; failure to pay one's tax obligations puts additional burdens on every other taxpaying citizen. Every tax dollar not collected is money that cannot be used for the myriad funding obligations of the federal government – bridges, highways, free school lunches, and more.

Benedetto is an attorney. He, more than others, should have respect for and commitment to the laws of the United States, including the tax laws. The defendant's repeated disregard for the tax laws merits a significant term of incarceration.

9

C.  **Deterrence and Protection of the Public**

Section 3553(a)(2)(B) provides that the sentence imposed should "afford adequate deterrence to criminal conduct." General deterrence is one of the prescribed goals of every sentencing, *United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008), but it occupies an especially important role in sentencing for criminal tax offenses because criminal tax prosecutions are relatively rare. The degree of resources necessary to detect and prove this type of offense means that the number of such prosecutions is quite limited, and thus a sentence that carries a general deterrent effect is very important. As the Sentencing Commission has stated:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would be violators.

Introductory Cmt. to U.S.S.G. § 2T1.1. *See also United States v. Burgos*, 276 F.3d 1284, 1290 (11th Cir. 2001) (observing "[f]or a judge sentencing a defendant convicted of tax evasion, the chief concern may be general deterrence").

The sentence imposed in this case should send a message to others contemplating tax offenses that imprisonment is a reality for those who violate the internal revenue laws. The sentence should also reassure law-abiding taxpayers that they are not foolish for complying with the law, filing tax returns and paying taxes. Our nation's tax system depends on the voluntary compliance of honest taxpayers. A sentence of imprisonment promotes voluntary compliance by making clear that there are consequences for those who choose not to comply.

Section 3553(a)(2)(C) states that the sentence imposed must protect the public from

10

future crimes of the defendant. It is clear that the defendant planned to continue his manner of doing business until he was caught.  A sentence at the high end of the guideline range is appropriate to prevent future violations of the tax laws, particularly for an employer entrusted with the duty to account for and pay over trust fund taxes. A sentence below the guidelines would send a message to the defendant that his conduct was not serious, that the tax laws of the United States are not as important, and that violating those laws is inconsequential.

      D.      **Need to Avoid Unwarranted Sentence Disparities Among Defendants Guilty of Similar Conduct**

Generally, the need to avoid unwarranted sentence disparities weighs in favor of imposing a sentence within the advisory guidelines range. The criminal tax provisions of the Guidelines were established explicitly in part "to reduce disparity in sentencing for tax offenses." U.S.S.G. §2T1.1 cmt. background; *see also* 28 U.S.C. § 991(b)(1)(B) (purposes of U.S. Sentencing Guidelines). And as the Supreme Court stated, "[f]or even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in *Rita*, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007) (referencing *Rita v. United States*, 551 U.S. 338, 349-350 (2007)).

Benedetto's payment of restitution should not dissuade the Court from a sentence of incarceration. [2] "Restitution is desirable but so is the deterrence of white-collar crime" and "the minimization of discrepancies between white- and blue-collar offenses . . . ." *United States v.*

---

[2] The fact that Benedetto has paid over $ 265,000 since receipt of a target letter in the criminal case, and in advance of sentencing, raises the question of why he could not make quarterly tax payments or bother to file returns.

*Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006). Moreover, rewarding Benedetto with a departure from the Guidelines because he was fortunate to have the means to pay restitution early would create disparities in the treatment of poor defendants who do not possess the means to buy their way out of jail. Setting that precedent will not only create a vicious pattern that will reward the well-off but will also send the wrong message to that population who will only need to ensure they have funds to pay for their freedom if they are ever caught.

  E. **<u>Kinds of Sentences and Sentencing Ranges Established by Guidelines</u>**

Although the United States Sentencing Guidelines are now advisory, § 3553(a)(4) directs the Court to consider "the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines."

The government anticipates that Benedetto will seek application of the new Guidelines Amendment, which is scheduled to become effective November 1, 2023. The new Chapter 4 guideline at Section 4C1.1 (Adjustment for Zero-Point Offenders), provides for a decrease of 2 offense levels for offenders, like defendant. Benedetto, who have zero Criminal History points. Application of Section 4C1.1 to Mr. Benedetto's case would result in an offense level of 15, a criminal history category I and a guideline imprisonment range of 18-24 months.

The Amendment has not yet gone into effect and has not been deemed retroactive. The government acknowledges that the Court may use pending guidelines amendments as a basis to grant a sentencing variance. *See, e.g., United States v. McMillan*, 863 F.3d 1053,1058 (8th Cir. 2017). If the Court seeks to grant the defendant's request for a variance based on the Guidelines Amendment, the record should be clear that defendant Benedetto should not get a further

reduction if the Amendment is decreed retroactive later.

IV. **CONCLUSION**

In sum, all of the appropriate considerations of sentencing favor the imposition in this case of a sentence of incarceration at the high end of the guidelines.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

/s/ Joan E. Burnes
JOAN E. BURNES
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the within pleading upon the following by filing it with the Court's Electronic Case Filing System:

>Joseph D. Mancano
>Mancano Law, PLLC
>353 W. Lancaster Avenue
>Suite 300
>Wayne, PA 19087
>jdm@mancanolaw.com

>/s/ Joan E. Burnes
>JOAN E. BURNES
>Assistant United States Attorney

DATED: August 21, 2023.